UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

MICHAEL DOLAN, SR.,

                Plaintiff,

    -against-

THE NEW HYDE PARK FIRE DISTRICT, RICHARD STEIN, JOHN DIVELLO, MICHAEL BONURA, JOHN BROWN, JOHN WALDRON, THE COUNTY OF NASSAU, JAMES P. GILROY, THOMAS CIPOLLA, and DETECTIVE WALKER.

                Defendants.
----------------------------------------X

**COMPLAINT**

Jury Trial Demanded

Plaintiff, MICHAEL DOLAN, SR., by his attorneys, Leeds Brown Law, P.C., complaining of Defendants herein, alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters:

### JURISDICTION AND VENUE

1. This is a civil action based upon Defendants violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution (as enforced by 42 U.S.C. § 1983), as well as any other cause of action that can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(4). The supplemental jurisdiction of the Court, pursuant to 28 U.S.C. § 1367, is invoked over state law causes of action.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. Plaintiff was deemed to have timely filed a notice of claim against the municipal defendants pursuant to an order of the Honorable F. Dana Winslow of the Supreme Court State of New York, County of Nassau.

## PARTIES

5. Plaintiff, Michael Dolan, Sr. ("Dolan"), was and still is a resident of Nassau County, New York.

6. Defendant, New Hyde Park Fire District (the "District"), was and still is a municipal fire district organized under the laws of the State of New York and located in Nassau County, New York.

7. Defendant, Richard Stein, was and still is a Commissioner of the District serving on the District's Board of Fire Commissioners (the "Board"). Therefore, Stein is a final policymaker for the District, charged with and responsible for properly training and supervising employees with respect to employment issues. Stein is sued in his official and individual capacities. Stein is a resident of the State of New York, County of Nassau.

8. Defendant, John DiVello, was and still is a Commissioner of the District serving on the District's Board of Fire Commissioners (the "Board"). Therefore, Divello is a final policymaker for the District, charged with and responsible for properly training and supervising employees with respect to employment issues. DiVello is sued in his official

2

and individual capacities. DiVello is a resident of the State of New York, County of Nassau.

9. Defendant, Michael Bonura, was and still is a Commissioner of the District serving on the District's Board of Fire Commissioners (the "Board"). Therefore, Bonura is a final policymaker for the District, charged with and responsible for properly training and supervising employees with respect to employment issues. Bonura is sued in his official and individual capacities. Bonura is a resident of the State of New York, County of Nassau.

10. Defendant, John Brown, was during relevant times, a Commissioner of the District serving on the District's Board of Fire Commissioners (the "Board"). Therefore, Brown was a final policymaker for the District, charged with and responsible for properly training and supervising employees with respect to employment issues. Brown is sued in his official and individual capacities. Brown is a resident of the State of New York, County of Nassau.

11. Defendant, John Waldron, was during relevant times, and still is a Commissioner of the District serving on the District's Board of Fire Commissioners (the "Board"). Therefore, Waldron is a final policymaker for the District, charged with and responsible for properly training and supervising employees with respect to employment issues. Waldron is sued in his official and individual capacities. Waldron is a resident of the State of New York, County of Nassau.

12. Defendant, County of Nassau ("Nassau"), at all times hereinafter mentioned, was and still is a municipal corporation of the State of New York, with its principal place of business at 1550 Franklin Avenue, Mineola, New York

13. Defendant, Thomas L. Cipolla, is a lieutenant in the Nassau County Police Department ("NCPD"). Cipolla works in the State of New York, County of Nassau.

14. Defendant, James P. Gilroy is a detective in the NCPD. Gilroy works in the State of New York, County of Nassau.

15. Defendant Walker, is a detective in the NCPD. Walker works in the State of New York, County of Nassau.

## FACTS

16. The New Hyde Park Fire Department ("NHPFD") operates under the authority and control of the District which has established certain Rules and Regulations under which the Department and its members are authorized to operate as a volunteer fire department.

17. The District is compromised of five commissioners (the "Board") who are elected by the public (residents of the District). Commissioners are not required to be members of the Department, but members of the Department may be elected as a commissioner. Indeed, any resident of the New Hyde Park Fire District may be elected as a commissioner.

18. Per the Department by-laws and as authorized by the District, the Department is further divided into five companies. Each company is assigned apparatus for which they are responsible. Further, each company also maintains its own by-laws and elects its own command structure which is subordinate to the Department elected officers who in turn, report to the Board.

19. Every member of the Department must also join a specific company, however, all members must be approved for membership by the District.

20. In 1967, Dolan joined the Department.

21. For nearly 50 years, Dolan participated as an active member of the Department.

22. Dolan rose through the operational ranks of the Department, holding positions as Lieutenant, Captain, Deputy Chief, and Chief.

23. Only members of the Department may hold the operational titles of Lieutenant, Captain, Deputy Chief, and Chief.

24. Throughout his years of volunteer service, Dolan performed in an exemplary manner.

25. In fall 2008, Dolan announced his intention to campaign for election to the District's Board of Fire Commissioners.

26. Dolan's opponent was DiVello. DiVello was appointed by the Board in June 2008 to fill a vacancy. Accordingly, DiVello was clearly backed and supported by the Board.

27. Indeed, Brooks openly endorsed DiVello and sent letters of support on his behalf to community groups.

28. Dolan lost the election to DiVello.

29. In 2009, Dolan again campaigned to be elected as a commissioner, this time against Brooks.

30. Brown endorsed Dolan. Brown wrote a letter to community residents discussing what he believed were "illegal" dealings in the District and that Dolan was well known for his honesty.

31. DiVello openly endorsed Brooks and signed a personal message to potential voters asking them to vote for Brooks.

32. Accordingly, the Board was dividing into political factions – those that supported Brooks and those that supported Dolan.

33. Dolan won the election and took office on January 1, 2010. Thus, as of January 1, 2010, Dolan had two roles – Dolan was a publicly elected commissioner of the District and he remained an active member of the Department.

34. On March 26, 2011, Dolan's wife, Frances attended a "Comedy Night" hosted by a company of the Department. At the end of the event, one of the fire department's company members, George Ruhl, approached Frances and yelled at her in a physically intimidating manner.

35. On March 29, 2011, Frances wrote a letter to the Department's Chief, John Willers, complaining about the incident.

36. On April 19, 2011, Frances complained by letter to the Board about the Comedy Night incident and Willer's handling of her complaints.

37. On May 15, 2011, Willers responded to Frances by letter dismissing her complaint and writing, among other things:

> I have advised the Enterprise Company, of which your husband is a member, that your husband also has the title of Commissioner and that this title must be respected at all times. Any further incidents will not be tolerated. Your husband has also been reminded that he must stop the personal attacks and public ridicule of members, which I personally have overheard. The respect is a two-way street and must be given to be received. Please be advised that while your husband has the title of Commissioner, it is not a rank within the command structure of the New Hyde Park Fire Department. He is still a Department member and is required to follow directions and orders from all Officers and Chiefs of the Department while attending meetings, functions, and calls.

7

> While it is agreed that you deserve an apology from Firefighter Ruhl for his actions, I feel that your actions intensified this situation to its current level. I also feel that you owe an apology to the Enterprise Company for your role in the intensification of this situation. This can be done verbally or in written form to the Captain of the Company.

38. On June 15, 2011, Frances, filed a complaint of discrimination with the New York State Division of Human Rights (the "Division"), based on the events flowing from the Comedy Night and alleging that Department members were discriminating against her based on her marital status, gender, and national origin.

39. On December 15, 2011, the Division dismissed Frances' complaint due to lack of subject matter jurisdiction.

40. On January 9, 2012, the Board approved a motion instituting a Senior Citizen Smoke Detector Project whereby the Board would work with local community organizations to raise funds to purchase batteries for smoke detectors in senior citizens' homes and Department members would assist the homeowners with installing the batteries.

41. The program was subsequently expanded to include smoke detectors.

42. On February 27, 2012, Frances refiled her complaint with the Division as a citizen, since the incident took place at a public event.

43. In June 2012, Dolan visited the Nassau County Fire Museum and met with the Museum's Chief John Murray, with whom Dolan had a relationship.

44. Dolan told Murry about the District's smoke detector program and Murray offered to give Dolan 150 smoke detectors to help with the program. The detectors were estimated to be worth ten dollars each, thus, the total value of the detectors was no more than $1,500.

45. Dolan intended to distribute the 150 detectors to senior citizens residing in the District.

46. Dolan brought the detectors back to the District and asked Stein, who was designated to be in charge of the program, if he could help. Stein said Dolan could not help, that the program was "his" (referring to Stein), and that Stein would get others to help.

47. Accordingly, Dolan put the smoke detectors in a secure room which is accessible only with an electronic key pass which is programmed by the District. Dolan had authorized and actual access to the room because he was a commissioner; indeed, only eight people have authorized and actual access to the room – the five commissioners, the secretary, the treasurer, and the main custodian. Department members and officers cannot access the room.

48. A few days later, Dolan noticed that many of the detectors were missing so he took them out of the room and brought them to his residence since he believed someone else was taking the detectors without authorization and for an improper purpose.

49. Later that day, Stein called Dolan and asked if he knew where the detectors were. Dolan told Stein that he brought them home and Stein asked if he intended to return them. Dolan said he would.

50. Dolan returned the detectors, but noticed a few days later that more detectors had been taken.

51. On June 21, 2012, Dolan returned to the firehouse with his son, Michael Dolan, Jr. ("Dolan Jr."), who is also a department member, and Dolan and Dolan Jr. took the remaining detectors.

52. Dolan distributed 24 detectors to senior citizens from the "Cellini Organization," an Italian-American organization, and returned the rest of the detectors to the Fire Museum. Dolan told Chief Murray that he was concerned that there was no accountability and that the detectors were going missing.

53. Upon information and belief, sometime after Dolan returned the detectors to Chief Murray, Stein reported to the Nassau County Police Department that Dolan had stolen 65 smoke detectors and that their value was $3,250.

54. Accordingly, the NCPD conducted an investigation.

55. Upon information and belief, during the investigation, the NCPD determined that the detectors were, in fact, returned to the Museum.

56. Despite having knowledge that the detectors were returned to the Museum, on July 15, 2012, Detectives Gilroy and Walker arrested Dolan and charged him Grand Larceny in the Third Degree, a felony. Lt. Cipolla signed the felony complaint which read:

> TO WIT: On the aforementioned date, time and place of occurrence, Michael Dolan, along with a not yet apprehended male, did remove 65 Kidde smoke detectors from a room within the New Hyde Park Fire Department. The defendant did not have permission or authority to remove the smoke detectors. The total value of the smoke detectors removed is $3250.00.

57. According to the felony complaint, each detector was worth $50, however, the detectors were worth no more than $10. Accordingly, the arresting officers could not have had reasonable suspicion or probable cause to believe that Dolan could be guilty of the crime for which he was charged.

58. Dolan was detained against his will in a cell for 21 hours.

59. Pursuant to the District's rules and regulations, if a member is convicted of a felony, such member "shall be automatically dropped from membership." Accordingly, if Dolan were to be convicted, he would have been terminated as a volunteer member.

60. On October 12, 2012, the Nassau County District Attorney's Office (the "NCDAO") moved to reduce and convert the felony charge to a misdemeanor because it believed there was no reasonable cause to believe Dolan committed a felony.

61. Honorable Susan T. Kluewer, Nassau County District Court Judge granted the motion.

62. The NCDAO then moved to dismiss the misdemeanor charge because it did not "really have reasonable cause to believe that defendant committed a misdemeanor" and that there was "insufficient evidence to proceed to trial."

63. Accordingly, Judge Kluewer dismissed the case and Dolan received a favorable determination.

64. On October 16, 2012, just four days after the NCDAO conceded it did not have reasonable cause of sufficient evidence to support its charges, Stein, on behalf of the Board, issued charges and specifications against Dolan, in his capacity as a volunteer member of the NHPFD.

65. A hearing on the charges was held on January 7 and 8, 2013.

66. On January 7, 2013, Stein stated that he "[doesn't] like the way [Dolan] handles himself as a Fire Commissioner."

67. On February 28, 2013, the hearing officer issued a report and recommendation that Dolan be removed as a member of the NHPFD.

68. On April 8, 2013, Bonura signed a final decision on behalf of the District and the Board dismissing Dolan from the NHPFD.

## AS AND FOR A FIRST CAUSE OF ACTION
### (First Amendment Retaliation – Political Activity)

69. Defendants, Stein, DiVello, Bonura, Brown and Waldron, acting under color of state law, denied Plaintiff terms, conditions and privileges of volunteer employment, and subjected Plaintiff to adverse actions based on his political activity in opposition to the Board, in violation of the First Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983.

70. Defendant, the District, has while acting under color of state law, deprived Plaintiff of his constitutional rights, as secured by the First Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983. Defendant intentionally committed, condoned or was deliberately indifferent to the aforementioned violations of Plaintiff's constitutional right to engage in political activity. Such deliberate indifference may be inferred in the following way: Policymakers, such as, Stein, DiVello, Bonura, and Brown, engaged in and/or tacitly condoned the violation of Plaintiff's rights, as described above.

## AS AND FOR A SECOND CAUSE OF ACTION
### (First Amendment Retaliation and Fourteenth Amendment– Intimate Association)

71. Defendants, Stein, DiVello, Bonura, and Brown, acting under color of state law, denied Plaintiff terms, conditions and privileges of volunteer employment and subjected Plaintiff to adverse actions in retaliation for his wife's expression of her right to petition the government in redress of grievances, in violation of the First and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983.

72. Defendant, the District, has while acting under color of state law, deprived Plaintiff of his constitutional rights, as secured by the First Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983. Defendant intentionally committed, condoned or was deliberately indifferent to the aforementioned violations of Plaintiff's constitutional right to intimate association. Such deliberate indifference may be inferred in the following way: Policymakers, such as, Stein, DiVello, Bonura, and Brown, engaged in and/or tacitly condoned the violation of Plaintiff's rights, as described above.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Abuse of Process)

73. Defendants, Stein, DiVello, Bonura, and Brown, acting under color of state law, caused the NCPD to arrest Dolan without proper cause and for the ulterior motive of creating sufficient cause to terminate Dolan's employment in violation of the Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983 and the Constitution and Laws of the State of New York State.

74. Defendant, the District, has while acting under color of state law, deprived Plaintiff of his constitutional rights, as secured by the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983. Defendant intentionally committed, condoned or was deliberately indifferent to the aforementioned violations of Plaintiff's constitutional right to intimate association. Such deliberate indifference may be inferred in the following way: Policymakers, such as, Stein, DiVello, Bonura, and Brown, engaged in and/or tacitly condoned the violation of Plaintiff's rights, as described above.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Malicious Prosecution)**

75. Defendants, Stein, DiVello, Bonura, and Brown, acting under color of state law, caused the NCPD to arrest Dolan without proper cause and allowed the NCDAO to prosecute to Dolan without probable cause and while knowing the value of the detectors did not support a felony complaint, in violation of the Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983, and the Constitution and Laws of the State of New York State. Further, defendants acted with malice and with the intent to have Dolan expelled from the Department.

76. Defendant, the District, has while acting under color of state law, deprived Plaintiff of his constitutional rights, as secured by the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983. Defendant intentionally committed, condoned or was deliberately indifferent to the aforementioned violations of Plaintiff's constitutional right to intimate association. Such deliberate indifference may be inferred in the following way: Policymakers, such as, Stein, DiVello, Bonura, and Brown,

engaged in and/or tacitly condoned the violation of Plaintiff's rights, as described above.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (False Arrest/False Imprisonment)

77. Defendants, Gilroy, Cipolla, and Walker, acting under color of state law, arrested and detained Dolan against his will without proper cause in violation of the Fourth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983 and the Constitution and Laws of the State of New York State.

78. Defendant, the County, has while acting under color of state law, deprived Plaintiff of his constitutional rights, as secured by the Fourth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983. Defendant intentionally committed, condoned or was deliberately indifferent to the aforementioned violations of Plaintiff's constitutional right to intimate association.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Battery)

79. Defendants, Gilroy and Walker committed a battery against Dolan by touching him without his consent.

WHEREFORE, Plaintiff demands judgment against all Defendants in the form of and/or for compensatory, emotional, physical, and punitive damages (where applicable), interest, injunctive relief, and any other damages permitted by law. Plaintiff also demands judgment against defendants for each cause action and for all applicable and permissible damages, in an amount to be assessed at the time of trial. The plaintiff further seeks injunctive relief, including but not limited to, the clearing of his personnel file of any wrongful disciplinary actions, immediate

reinstatement, and a permanent injunction enjoining all Defendants and their agents from any further actions abridging Plaintiff's rights. Plaintiff further demands all attorneys' fees, disbursements and other costs and all further relief, equitable or otherwise, to which Plaintiff is entitled and/or which the court deems just and proper.

Dated: Carle Place, New York
      October 11, 2013

                                      LEEDS BROWN LAW, P.C.
                                      Attorneys for Plaintiff
                                      One Old Country Road, Suite 347
                                      Carle Place, New York 11514
                                      (516) 873-9550

                                      _____/s/_____
                                        MATTHEW WEINICK