# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 13-CV-5651 (JFB)(SIL)

MICHAEL DOLAN, SR., ET AL.,

Plaintiffs,

VERSUS

THE NEW HYDE PARK FIRE DISTRICT, ET AL.,

Defendants.

**AMENDED MEMORANDUM AND ORDER**
December 22, 2017

JOSEPH F. BIANCO, District Judge:

Plaintiffs Michael Dolan, Sr. ("Dolan Sr.") and Michael Dolan, Jr. ("Dolan Jr.," and, together with Dolan Sr., "plaintiffs") brought this action against the County of Nassau (the "County"), Detective James P. Gilroy ("Detective Gilroy"), and Detective Thomas Walker ("Detective Walker"), as well as the New Hyde Park Fire District (the "District"), Commissioner Richard Stein ("Commissioner Stein"), Commissioner John DiVello ("Commissioner DiVello"), Commissioner Michael Bonura ("Commissioner Bonura"), Commissioner John Brown ("Commissioner Brown"), Commissioner John Waldron ("Commissioner Waldron"), and Robert Von Werne (together, "defendants"). The amended complaint asserted violations of 42 U.S.C. § 1983 and New York state law based upon alleged First Amendment violations, abuse of process, malicious prosecution, and false arrest/false imprisonment.[1]

A jury trial on plaintiffs' claims took place from March 9, 2017 through March 28, 2017. The jury returned a verdict in favor of plaintiffs on their claims for malicious prosecution and abuse of process against the District and Commissioners Stein, DiVello, Bonura, and Brown. The jury awarded Dolan Sr. $150,000 in

---

[1] On September 31, 2015, the County, Detective Gilroy, and Detective Walker were dismissed from the action. (ECF No. 31.) In addition, on March 10, 2016, the Court granted Commissioner Waldron's motion for summary judgment as to the abuse of process claim, the federal malicious prosecution claim, and Dolan Jr.'s state malicious prosecution claim; and granted defendants' motion for summary judgment as to Dolan Sr.'s First Amendment retaliation claim. (ECF Nos. 34, 35.) However, in light of the Supreme Court's decision in *Heffernan v. City of Paterson, New Jersey.*, 136 S. Ct. 1412 (2016), the Court subsequently granted plaintiffs' motion to reconsider the Court's ruling as to Dolan Sr.'s First Amendment retaliation claim, and reinstated that claim. (ECF No. 46.)

compensatory damages and $30,000 in punitive damages against Commissioner Stein.[2] The jury awarded Dolan Jr. $400,000 in compensatory damages, $30,000 in punitive damages against Commissioner Stein, and $5,000 each in punitive damages against Commissioners DiVello, Bonura, and Brown.

Presently before the Court is defendants' motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 as to liability and as to the jury's award of punitive damages, or a new trial as to both liability and damages pursuant to Federal Rule of Civil Procedure 59.[3] In short, defendants argue that the Court's jury instructions relating to the abuse of process and malicious prosecution claims were erroneous; that there was insufficient evidence supporting the jury's finding that defendants' acted maliciously and its resulting punitive damages award; and that the damages awards were excessive. The Court disagrees.

First, with respect to the jury instructions regarding abuse of process, any argument that the Court should have instructed that the jury had to find improper use of the process *after* plaintiffs were arrested has been waived by defendants (because it was not raised at trial), and the Court finds no manifest injustice will result from enforcing that waiver. In any event, even assuming *arguendo* that such a requirement exists for an abuse of process claim, such evidence clearly existed in the record to satisfy that requirement based upon the defendants' utilization of the process (i.e., the arrest) to bring departmental charges against plaintiffs. Although this Court ruled that the disciplinary proceeding could not itself constitute the necessary "process" for this claim, the Court did not rule that the departmental charges could not be the basis for the collateral objective, or the basis for any requirement that some improper use of the process must occur after the issuance of the process. Given the uncontroverted evidence that the process was used to bring departmental charges (and the ability for the jury to find that such action was both improper and the basis for the collateral objective), any alleged failure to instruct the jury on this alleged legal requirement was harmless.

Second, with respect to the jury instructions on the malicious prosecution claim, the Court concludes that defendants' argument regarding the "probable cause" instruction is entirely unpersuasive. Contrary to defendants' contention, the Court properly instructed the jury that the "probable cause" analysis related to the felony crime that plaintiff was actually charged with—namely, Grand Larceny in the Third Degree—rather than some lesser crime such as theft. Here, a rational jury could have found: (1) that Commissioner Stein told the police that plaintiffs had removed 65 smoke detectors from the firehouse worth $50 (for a total value of $3,250), even though Chief Murray valued them at $10 each, and Commissioner Stein later admitted at his deposition that they were valued at $20-30 each; and (2) that Commissioner Stein provided that false information concerning the value of the detectors intentionally and maliciously in order to reach the threshold of $3,000 required to charge plaintiffs with a felony— which is exactly what the police did—so

---

[2] With respect to Dolan Sr., the jury found that punitive damages were warranted against only Commissioner Stein on the malicious prosecution claims and as to all defendants on the abuse of process claims, but imposed $0 as to Commissioners DiVello, Bonura, and Brown. (*See* ECF No. 87 (verdict sheet).)

[3] Defendants also request that, should the Court decline to order a new trial, it should order remittur of plaintiffs' compensatory damages awards.

2

that plaintiffs could be removed from the fire department under the disciplinary rules. Defendants argue that they should not be held responsible for the "uncontrolled choice" of the police to charge the felony. However, under the particular circumstances of this case, the police's charging decision was far from uncontrolled. There was more than sufficient evidence from which the jury could rationally conclude that the police decided to charge exactly what Commissioner Stein hoped that they would charge, and that Commissioner Stein intentionally and maliciously provided false information to initiate and support that specific charge (in the form of a supporting deposition). For instance, the police officer testified that he had no independent information regarding the value of the fire detectors other than what Commissioner Stein told him. Accordingly, the Court properly instructed the jury that the "probable cause" analysis related to the felony charge, not some lesser charge. To hold otherwise would allow a private actor to supply false information for the specific reason of encouraging the police to initiate a prosecution for an extremely serious offense to avoid liability for malicious prosecution of that offense simply because there was probable cause for some minor uncharged offense. There is simply no legal basis for such a rule as it relates to a malicious prosecution claim under the circumstances presented in this case.

Third, as noted above, there was more than sufficient evidence from which a rational jury could find that Commissioner Stein acted maliciously—specifically, by intentionally providing false information to the police regarding the value of the detectors (and other circumstances surrounding the removal of the detectors) for the malicious purpose of having plaintiffs charged with a felony which would allow Commissioner Stein to have plaintiffs automatically expelled from the fire department. In addition, defendants argue that there was no basis for the jury to find the other defendants (Commissioners Bonura, DiVello, and Brown) also acted maliciously such that punitive damages (in the amount of $5,000 each) was warranted. The Court disagrees. There is evidence in the record that, *inter alia*, (1) these Commissioners approved of Commissioner Stein contacting the police regarding the detectors, (2) after the arrest, Commissioners Brown, Stein, and Bonura went to the District Attorney's Office to discuss the charges, including the value of the detectors (although Commissioner Bonura testified that they told the prosecutor during the meeting that they did not know the value, despite Commissioner Stein's prior sworn statement that they were worth $50 each), and (3) Commissioner DiVello testified that he knew that plaintiffs would be removed from the fire department automatically if there was a felony conviction.

Fourth, the Court finds no basis to disturb the compensatory or punitive damages awarded to plaintiffs by the jury. As a threshold matter, given that plaintiffs prevailed on the abuse of process and malicious prosecution claims, the jury could award damages for the arrest and confinement prior to the arraignment. With respect to Dolan Jr., the Court concludes that it was not beyond the bounds of reasonableness for the jury to award compensatory damages in the amount of $400,000 for his loss of liberty, his emotional distress, and the reputational damages caused by the arrest and prosecution. At the trial, Dolan Jr., among other things, testified that: (1) he was searched and held at the police station for eight hours, shackled to the wall; (2) his felony arrest was reported on television, in newspapers, and on the internet; and (3) he

3

agonized for months over the negative impact that this charge would have over his career and his life. With respect to Dolan Sr., the Court similarly concludes that $150,000 in compensatory damages is within the range of reasonableness given the evidence of his loss of liberty, emotional distress, and reputational harm. The Court also concludes that the award of punitive damages is supported by the evidence in the case and is reasonable. In short, in light of all of the damages evidence, there was nothing "conscience-shocking" about the jury's damages award, and the damages were well within the reasonable range.

I. BACKGROUND[4]

A. Factual Background

The Court assumes familiarity with the facts of this case, but provides a brief overview for purposes of the instant motion.

On June 21, 2012, plaintiffs removed a number of smoke detectors from the firehouse. Commissioner Stein, acting as Chairman of the Board of Commissioners, reported the alleged theft to the Suffolk County Police Department. Commissioner Stein made incorrect statements as to the value and/or number of the removed smoke detectors. (Tr. 712:18-714:10.) Commissioner Stein was the only commissioner-defendant who contacted the police in connection with the smoke detector removal. (Tr. 281:17-293:19; 370:1-21; 392:5-23; 420:8-13; 516:15-518:8; 1444:19-22; 1464:7-15; 1473:6-19.) Commissioner Stein did not identify plaintiffs or otherwise inform the police as to who he believed removed the detectors. (Tr. 257:7-17.) Commissioner Stein signed a deposition complaining of the alleged theft. (Pl.'s Ex. 20.)

After Commissioner Stein reported the removal of the smoke detectors to the police, he spoke with Dolan Sr. and encouraged him to return the smoke detectors to avoid prosecution. (Tr. 154:19-24; 704:4-7.) Dolan Sr. failed to return the smoke detectors, and he and Dolan Jr. were subsequently arrested by the police. (Tr. 118:16-22; 154:19-24; 184:2; 186:5-9; 186:17-187:2.) Later, departmental charges were brought against plaintiffs for the removal of the smoke detectors. A hearing was held in January of 2013, and resulted in the recommendation that Dolan Jr. be reinstated as a firefighter and Dolan Sr. be discharged. The Board of Commissioners voted to accept the recommendation.

B. Procedural Background

As noted above, trial concluded in the instant case on March 28, 2017. Defendants moved for judgment as a matter of law under Rule 50 as to liability and punitive damages, or to set aside the verdict and for a new trial under Rule 59 on May 24, 2017 (ECF No. 98), and submitted a revised brief on May 25, 2017 (ECF No. 101). Plaintiffs filed their opposition to the motion on July 5, 2017. (ECF No. 105.) Defendants replied on July 21, 2017. (ECF No. 107.) The Court has fully considered the parties' submissions.

II. STANDARD OF REVIEW

A. Rule 50

The standard governing motions for judgment as a matter of law pursuant to Rule

---

[4] Although defendants cite to post-trial public statements made by members of the Dolan family about the verdict (*see* Defs.' Br. 3-4), the Court finds those statements to be irrelevant to the legal issues before the Court in the post-trial motions. Plaintiffs' request that the Court strike the supporting affidavits and admonish counsel for the inclusion of this material. (Pls.' Br. 23.) However, in its discretion, the Court concludes that there is no need to strike them from the record, nor to admonish counsel.

4

50 is well-settled. A court may not properly grant judgment as a matter of law under Rule 50 against a party "unless the evidence, viewed in the light most favorable to the nonmoving party, is insufficient to permit a reasonable juror to find in his favor." *Arlio v. Lively*, 474 F.3d 46, 51 (2d Cir. 2007) (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998)). Generally, a court reviewing such a motion must defer to all credibility determinations and reasonable inferences that the jury may have drawn at trial. *See Frank Sloup & Crabs Unltd., LLC v. Loeffler*, 745 F. Supp. 2d 115, 120 (E.D.N.Y. 2010). That is, a court considering a Rule 50 motion "may not itself weigh the credibility of witnesses or consider the weight of the evidence." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001) (quoting *Galdieri-Ambrosini*, 136 F.3d at 289); *see also Playtex Prods., Inc. v. Procter & Gamble Co.*, 02 Civ. 8046 (WHP), 2004 U.S. Dist. LEXIS 14084, at *5-6 (S.D.N.Y. July 26, 2004) ("A Rule 50(b) motion cannot be granted 'if, drawing all reasonable inferences in favor of the nonmoving party and making all credibility assessments in his favor, there is sufficient evidence to permit a rational juror to find in his favor.'" (quoting *Sir Speedy, Inc. v. L&P Graphics, Inc.*, 957 F.2d 1033, 1039 (2d Cir. 1992))).

Thus, judgment as a matter of law is appropriately granted where:

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Advance Pharm., Inc. v. United States*, 391 F.3d 377, 390 (2d Cir. 2004) (alterations in original) (quoting *Galdieri-Ambrosini*, 136 F.3d at 289); *see also Kinneary v. City of N.Y.*, 601 F.3d 151, 155 (2d Cir. 2010) (same); *This is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998) (stating that a court assessing a Rule 50 motion must consider whether "the evidence is such that, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [people] could have reached" (quoting *Cruz v. Local Union No. 3, Int'l Bd. of Elec. Workers*, 34 F.3d 1148, 1154-55 (2d Cir. 1994))). In other words, this Court may only grant defendants' Rule 50 motion "if it cannot find sufficient evidence supporting the jury's verdict." *Playtex Products*, 2004 U.S. Dist. LEXIS 14084, at *6; *see also Black v. Finantra Capital, Inc.*, 418 F.3d 203, 209 (2d Cir. 2005) ("A court evaluating . . . a motion [for judgment as a matter of law] cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury."). For this reason, a party moving to set aside a jury verdict must clear "a high bar." *Lavin-McEleney v. Marist College*, 239 F.3d 476, 479 (2d Cir. 2001).

B. Rule 59

A court may grant a new trial in a jury case for any of the reasons "for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The decision whether to grant a new trial under Rule 59 "is 'committed to the sound discretion of the trial judge.'" *Stoma v. Miller Marine Servs., Inc.*, 271 F. Supp. 2d 429, 431 (E.D.N.Y. 2003) (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350,

5

363 (2d Cir. 1992)). Thus, "[a] new trial may be granted . . . when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998).

In contrast to a motion for judgment as a matter of law, a court may grant a motion for a new trial "even if there is substantial evidence supporting the jury's verdict." *Id.* at 134. Additionally, "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Id.* (citing *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)). A court considering a Rule 59 motion for a new trial, however, "must bear in mind . . . that the court should only grant such a motion when the jury's verdict is 'egregious.'" *Id.* For this reason, "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quoting *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998)); *see also Patrolmen's Benevolent Ass'n of N.Y.C. v. City of New York*, 310 F.3d 43, 54 (2d Cir. 2002). Furthermore, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Fugazy*, 983 F.2d at 363; *see also DLC Mgmt. Corp.*, 163 F.3d at 134 ("[A] court should rarely disturb a jury's evaluation of a witness's credibility.").

With respect to damages, it is well settled that, pursuant to Rule 59, a trial judge has the discretion to grant a new trial if the verdict is against the weight of the evidence, and "[t]his discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996); *accord Rangolan v. County of Nassau*, 370 F.3d 239, 244 (2d Cir. 2004); *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 117 (2d Cir. 2004). As the Second Circuit has instructed, "[w]here there is no particular discernable error, we have generally held that a jury's damage award may not be set aside as excessive unless 'the award is so high as to shock the judicial conscience and constitute a denial of justice.'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir. 1988)). However, if the trial judge identifies a specific error, "the court may set aside the resulting award even if its amount does not 'shock the conscience.'" *Id.* In reviewing a claim that a jury's damages award was excessive, the court must "accord substantial deference to the jury's determination of factual issues." *Martell v. Boardwalk Enters.*, 748 F.2d 740, 750 (2d Cir. 1984). Moreover, "the trial judge is not called upon to say whether the amount is higher than he [or she] personally would have awarded." *Dagnello v. Long Island R.R.*, 289 F.2d 797, 806 (2d Cir. 1961).

The compensatory damages awarded to Dolan Sr. in this case, however, were awarded based on the finding of liability on parallel federal and state law claims. "A federal court, in reviewing the amount of damages awarded on a state law claim, must apply New York law." *Patterson v. Balsamico*, 440 F.3d 104, 119 (2d Cir. 2006) (citing *Gasperini*, 518 U.S. at 430-31 and *Cross v. N.Y.C Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005)). "New York law provides that the appellate division 'reviewing a money judgment . . . in which it is contended that the award is excessive or inadequate . . . shall determine that an award

is excessive or inadequate if it deviates materially from what would be reasonable compensation.'" *Id.* (alterations in original) (quoting N.Y. C.P.L.R. § 5501(c)). The Supreme Court has held that "the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered." *Gasperini*, 518 U.S. at 435 (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989)).[5]

"To determine whether an award 'deviates materially from what would be reasonable compensation,' New York state courts look to awards approved in similar cases." *Id.* at 425. These awards, however, are "not binding but instructive." *In re Joint E. & S. Dist. Asbestos Litig.*, 9 F. Supp. 2d 307, 311 (S.D.N.Y. 1998); *see also Senko v. Fonda*, 53 A.D.2d 638, 639 (N.Y. App. Div. 1976) (stating that prior awards are not binding but that they "may guide and enlighten the court and in a sense, may constrain it"). "[The § 5501(c)] standard requires a court to determine a reasonable range and to take corrective action when the particular jury award deviates materially from that range." *Peterson v. County of Nassau*, 995 F. Supp. 305, 321 (E.D.N.Y. 1998).

Although N.Y. C.P.L.R. § 5501(c) requires "closer court review than the common-law 'shock the conscience' test," *Gasperini*, 518 U.S. at 429, "[d]ue to the uncertainties in calculating [non-economic] damage awards, New York courts have consistently held that deference to the jury's findings is required" in reviewing a jury's award. *Cantu v. Flanigan*, 705 F. Supp. 2d 220, 227 (E.D.N.Y. 2010); *see also Levine v. E. Ramapo Cent. Sch. Dist.*, 192 A.D.2d 1025, 1026 (N.Y. App. Div. 1993) (stating that "considerable deference should be accorded to the interpretation of the evidence by the jury").

III. DISCUSSION

For the following reasons, the Court denies defendants' motions under Rules 50 and 59 in their entirety.

A. Rule 50[6]

1. Abuse of Process

Defendants first argue that Rule 50 relief is warranted because there was no evidence of improper use of process *after* plaintiffs were arrested, and, thus, there was not evidence supporting the jury's verdict as to the abuse of process claim. (Defs.' Br. 4-6.)[7] In particular, defendants assert that the

---

[5] The Supreme Court noted in *Gasperini* that the quoted holding from *Browning-Ferris* referred to punitive damages, but explained that "[f]or purposes of deciding whether state or federal law is applicable, the question whether an award of compensatory damages exceeds what is permitted by law is not materially different from the question whether an award of punitive damages exceeds what is permitted by law." 518 U.S. at 435 n.18 (quoting *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1012 (1995)). Accordingly, this Court extends the standard of review set forth in *Gasperini*, *Browning-Ferris*, and *Consorti* to the instant motion.

[6] Defendants moved for judgment as a matter of law as to punitive damages and liability at the close of plaintiffs' case. The Court denied the motion with leave to renew after the jury reached its verdict.

[7] Defendants appear to argue that the jury's failure to impose punitive damages against Commissioners Bonura, DiVello, and Brown for malicious prosecution, and much less than that imposed against Commissioner Stein for abuse of process (as to Dolan Jr.), leads to the conclusion that there was no evidence of any misconduct by these particular defendants. The lack of merit to this argument is apparent on its face: the jury's decision whether to award punitive damages, and its decision as to the appropriate amount of any punitive damages award, is obviously completely distinct from its decision as

only acts taken by defendants after plaintiffs were arrested related to expelling plaintiffs from the fire department. (*Id.* at 5.) Defendants argue that these acts cannot be the basis for the abuse of process claim because, first, the jury found the expulsion was not retaliation for plaintiffs' arrest, and, second, the Court made clear that defendants' decision to initiate department charges seeking plaintiffs' expulsion could not be the basis for the abuse of process claim. (*Id.*) For these reasons, defendants request that the Court overturn the verdict finding liability on the abuse of process claim and, separately, the imposition of punitive damages.

In response, plaintiffs argue that (1) defendants waived this argument because they failed to raise it at trial, and specifically failed to raise it in the discussions concerning the jury instructions; (2) proof of a defendant's actions after process was issued is not required to establish an abuse of process claim; (3) process was first issued when Commissioner Stein filed the police report, not when plaintiffs were arrested; and (4) defendants did act following the arrest because Commissioners Stein, Bonura, and Brown, along with counsel, subsequently met with the District Attorney to encourage charges be pursued and continued to provide false information.

As a threshold matter, the Court agrees that defendants have waived this argument. Defendants did not raise this issue before the case was submitted to the jury for its determination; they did not propose any jury instructions in connection with it; and they did not object to the relevant jury instructions in the course of the lengthy discussion in court of the instructions before they were given to the jury. In this situation, defendants have waived this argument absent manifest injustice. *See ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 98 (2d Cir. 2014) ("At no point prior to its post-judgment motion had UPS raised its concerns about the jury instructions on bad faith, or articulated to the district court its two theories of bad faith under Georgia law. . . . UPS failed to preserve its contention that reasonable grounds existed as a matter of law because it did not move under Rule 50(a), nor did it object under Rule 51 to the court's charge on 'reasonable grounds.'"); *see also e.g.*, *Chen v. County of Suffolk*, 927 F. Supp. 2d 58, 65-66 (E.D.N.Y. 2013). Indeed, the parties extensively discussed the wording of the abuse of process claim, and, after the Court agreed to plaintiffs' suggestion as to setting forth the second and third elements of the claim, defendants' counsel stated he

---

to liability. In fact, even where a jury declines to award any damages, that decision does not form a basis upon which to question the validity of its preceding finding of liability. *See, e.g.*, *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("By making the deprivation of [constitutional] rights actionable [under Section 1983] for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed."); *King v. Macri*, 800 F. Supp. 1157, 1162 (S.D.N.Y. 1992) ("[T]he failure to award compensatory damages is not dispositive of the question whether a plaintiff has suffered a deprivation of his constitutional rights."); *see also Uryevick v. Rozzi*, 751 F. Supp. 1064, 1071 (E.D.N.Y. 1990) ("Punitive damages may be awarded even in the absence of compensatory damages."). Here, there was evidence that (1) Commissioners Bonura, DiVello, and Brown approved having Commissioner Stein report the information to the police that led to Dolan Jr.'s arrest and prosecution, (2) Commissioners Brown and Bonura, along with Commissioner Stein, met with the Assistant District Attorney, and (3) Commissioner DiVello knew that, if they were convicted of a felony, plaintiffs would be automatically expelled from the fire department. The Court concludes that there was sufficient evidence against all defendants to find maliciousness and to award the amount of punitive damages that was imposed against each individual defendant.

had no objection. (Tr. 849:6-864:20.) As the Court discusses in greater detail below, considering the evidence in the light most favorable to plaintiffs, and giving plaintiffs the benefit of all reasonable inferences that the jury might have drawn in its favor, the Court concludes that a jury, though not compelled to do so, could have found the collateral objective requirement was met based upon the departmental charges instituted against plaintiffs, and there was no legal error in the jury instructions. Under these circumstances, there is no injustice and certainly no manifest injustice. *ING Global*, 757 F.3d at 98-99 ("If UPS preferred a more nuanced or specific definition, it was obligated to request one.").

Even assuming defendants did not waive this argument, there was no error in the Court's instructions. Defendants ignore a key theory as to the collateral objective element of the abuse of process claim that was advanced by plaintiffs at trial, which was based upon defendants' ultimate expulsion of plaintiffs from the fire department in light of their pending felony charge. In particular, at trial, plaintiffs argued to the jury "that the collateral objective [of initiating criminal charges against plaintiffs] that [defendants] were trying to achieve was to get [plaintiffs] kicked out of the department." (Tr. 969:18-20.) Therefore, to the extent defendants argue there was no evidence of improper use of process *after* plaintiffs' arrests, the Court disagrees.

Contrary to defendants' assertion (Defs.' Br. 5), the Court did not rule that defendants' decision to initiate and pursue departmental charges against plaintiffs seeking their expulsion could not form part of plaintiffs' abuse of process claim. Instead, the Court ruled that the initiation and pursuit of departmental charges against plaintiffs could not be the *process* that was abused for purposes of an abuse of process claim, because plaintiffs could not show any collateral objective of those proceedings. In particular, the Court rejected plaintiffs' suggestion that the objective of firing plaintiffs could be considered a collateral objective of the departmental charges because discipline (such as termination) is the very objective of departmental charges. However, the Court did not rule that the departmental charges, which uncontrovertibly occurred "after" plaintiffs' arrest,[8] could not constitute a collateral objective of plaintiffs' arrest and thus satisfy this element of the abuse of process claim. In fact, wrongfully seeking to affect a person's employment is a collateral objective that can form the basis of an abuse of process claim. *See, e.g.*, *Levy v. City of New York*, 935 F. Supp. 2d 575, 592 (E.D.N.Y. 2013) (dismissing abuse of process claim on malice prong, but accepting "causing [plaintiff] to lose his job as a teacher" as a satisfactory collateral objective); *OfficeMax Inc. v. Sousa*, Civ. No. 09-631 (P)(W), 2010 WL 2719074, at *2 (D. Me. July 7, 2010) (denying motion to dismiss claim where collateral objective alleged was causing plaintiffs' employer to fire them); *see also Hernandez v. Wells*, 01 Civ. 4376 (MBM), 2003 WL 22771982, at *9 (S.D.N.Y. Nov. 18, 2003) (finding collateral objective met where defendant fabricated assault charges to save his job because "safeguarding one's own employment lies outside the legitimate goal of criminal process"). Moreover, assuming *arguendo* that the law required evidence of improper use of process after the arrest, the departmental charges would have clearly

---

[8] In light of this analysis, the Court need not decide whether defendants are correct as a matter of law that there must be some action taken by defendants after process is initiated to sustain an abuse of process claim, which plaintiffs contest.

9

satisfied that element.[9]

In addition, the Court rejects defendants' contention that "[t]he jury . . . returned a contradictory verdict in favor of the Defendants respecting Plaintiffs' first two counts by finding that after their arrests the Defendants did not retaliate against the Plaintiffs by expelling them from the fire department." (Defs.' Br. 5.) The jury's verdict only referenced retaliation in the context of the First Amendment, namely, (1) Dolan Sr.'s First Amendment retaliation claim based upon his free speech (or perceived free speech) and his intimate association with his spouse, and (2) Dolan Jr.'s First Amendment retaliation claim based upon his intimate association with his father and/or mother. (*See* ECF No. 88, Court Ex. E, at 88-91.) Thus, although the jury found defendants were not liable for alleged retaliation in the First Amendment context, such a finding is not inconsistent with a finding that defendants filed the criminal complaint in order to obtain the collateral objective of initiating departmental charges against plaintiffs.

In sum, defendants waived their argument as to the abuse of process claim, and, in any case, it fails on the merits.[10]

2. Malicious Prosecution

Defendants argue that the jury's verdict as to the malicious prosecution claims should be overturned because the Court erroneously instructed the jury that the probable cause element of the malicious prosecution claims would be met if defendants lacked probable cause to initiate criminal proceedings for the charge of Grand Larceny in the Third Degree—the crime with which plaintiffs were charged—as opposed to probable cause that any theft occurred. (Defs.' Br. 8.)[11]

Defendants argue that the Second Circuit's decision in *Rothstein v. Carriere*, 373 F.3d 275 (2d Cir. 2004) supports their position. However, *Rothstein* does not stand

---

[9] Plaintiffs also point to the evidence that Commissioners Stein, Bonura, and Brown subsequently met with the prosecutor after the arrests to talk about proceeding on the charges. Commissioner Bonura testified that the value of the detectors was discussed at the meeting, but that they did not know the detectors' value. (Tr. 367:18-370:21.)

[10] The Court also rejects defendants' argument, which is not supported by any legal authority, that the intent element of abuse of process and malicious prosecution claims was not met as to either claim because Dolan Sr. "was given the chance to avoid criminal proceedings, but refused it." (Defs.' Br. 15.) Here, there was evidence that Commissioner Stein provided false information to the police with the Board's authority, and that the other Board members knew of this action and did not provide relevant information to the police that may have resulted in the police deciding not to arrest plaintiffs. Based upon this evidence, the jury could have found the requisite intent to establish liability for abuse of process and malicious prosecution.

[11] As defendants note, this instruction was based, in part, on the Court's review of *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782 (3d Cir. 2000). In *Merkle*, the Third Circuit rejected the notion that, because a police officer may have probable cause to arrest based upon false information knowingly supplied by a third party, and thus that officer would be immune from a malicious prosecution suit, the third party in turn would be immune from suit. Defendants take issue with the Court's application of the *Merkle* case because it did not provide guidance as to appropriate jury instructions. (Defs.' Br. 9.) However, the Court cited *Merkle* for the proposition that private actors can be responsible for charging decisions that are based upon false information that is maliciously provided by the private actor to initiate the prosecution. Although not discussed in *Merkle*, to the extent that defendants argue that a different probable cause standard should be applied to private actors for malicious prosecution claims—namely, whether there is probable cause for the any crime, rather than the crime charged based upon the false information provided by the private actor—the Court rejects the argument for the reasons discussed herein.

10

for the proposition that the probable cause element of a malicious prosecution claim is not satisfied where there is probable cause that a plaintiff committed *any* crime, regardless of what crimes were ultimately charged or the connection between those charges and defendant's false statements. In fact, the opinion states on multiple occasions that the probable cause requirement applies to the *charged* crime. *See, e.g.*, *id.* at 283 ("[T]he plaintiff must prove that there was no probable cause for *the criminal charge.*" (emphasis added)); *id.* ("A central issue in this case was whether the prosecution in question was initiated in the absence of probable cause to believe the *crimes charged* were committed by [plaintiff]." (emphasis added)).[12] Indeed, in another Second Circuit case, the Court explicitly held that "a finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges . . . ." *D'Angelo v. Kirschner*, 288 F. App'x 724, 726 (2d Cir. 2008); *see also Torres v. Jones*, 26 N.Y.3d 742 (2016) ("[T]he plaintiff in a malicious prosecution action must also establish at trial the absence of probable cause to believe that he or she committed the *charged crimes*.") (emphasis added) (cited with approval, *Keith v. City of New York*, 641 F. App'x 63, 67 (2d Cir. 2016)).

---

[12] Further, the Second Circuit in *Rothstein* took issue with the jury instructions as to probable cause only on the ground that they improperly focused on whether probable cause existed based upon only the false statements defendant made (and not whether it existed when all information possessed by the police was taken into account), and whether probable cause existed at the time the statements were made (and not when the prosecution was initiated). 373 F.3d at at 292-93. Here, the Court clearly instructed the jury that it must take into consideration both the facts known to the defendants, as well as any additional facts independently possessed by the police, and that its determination must focus on whether probable cause existed "when the prosecution was initiated." (Jury Charge, ECF No. 72 at 26.)

Further, the Court finds no basis to deviate from this precedent in the case of private individuals under the particular circumstances of this case. Defendants invite the Court to do so because the Restatement of Torts states, in relevant part, that a person who does not initiate criminal proceedings may generally procure their initiation and ultimately be liable for malicious prosecution; however, no such procurement exists where the person who initiates the prosecution has the uncontrolled discretion to so initiate it. (*See* Defs.' Br. 9-10 (citing Rest. Torts § 653, cmt. b).) In support of this argument, defendants note that Commissioner Stein did not specifically report plaintiffs as the culprits; he, along with the other commissioners, were willing to forego arrest and prosecution; and Dolan Sr. did not contradict Commissioner Stein's testimony that the police asked for plaintiffs' cooperation. (Defs.' Br. 10.) In light of this, defendants argue that the police "acted as they saw 'fit' and they could and perhaps did engage in further investigation" following Commissioner Stein's complaint. (*Id.*) This argument fails. Plaintiffs point to another provision that vitiates defendants' reliance on this provision of the Restatement. (*See* Pls.' Br. 11.) That provision applies where, as here, a private person gives a public official information of another's supposed criminal misconduct. The provision states: "[Where] the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible and a prosecution based thereon is procured by the person giving the false information." Rest. Torts § 653 cmt. g.

This provision and the Court's instruction are aligned, and the evidence adduced at trial shows that the jury's verdict was consistent with both. At trial, evidence indicated that Commissioner Stein, with the approval of the Board, provided information

he knew to be false, rendering intelligent exercise of the police's discretion "impossible," and the resulting prosecution "procured by" defendants. *See id.* Further, uncontroverted evidence showed that, but for this information, plaintiffs would not have been arrested or prosecuted. Thus, defendants' own cited source reveals that their request is meritless.

In addition, the Court disagrees with defendants' policy-based arguments. These include the assertion that denying their motion to overturn the verdict will discourage the reporting of crime, police officers independently investigating a reported crime, and/or prudent persons from performing volunteer work, as well as their assertion that public safety and order would be jeopardized because, in essence, the Court's decision places the responsibility of determining whether probable cause exists on lay persons. (*See* Defs.' Br. 12.) The fact that the Court's decision (and the legal authority upon which it is based) only applies where a private individual knowingly provides false information to the police reveals the hollowness of defendants' arguments. It is not plausible that potential liability for providing false statements to the police would discourage volunteerism or the reporting of crime. Further, although *Rothstein* highlighted the importance of avoiding deterring persons from providing truthful information through expansive rules created to punish the provision of false information, the Second Circuit also stressed that the additional requirements of malicious prosecution claims—such as lack of probable cause and initiation by the defendant—protected defendants whose only wrongdoing was telling lies to the police. 373 F.3d at 295. Finally, there is no merit to defendants' contention that the Court's position will discourage police from independently investigating a reported crime. It is already well-settled that "[w]hen information [regarding an alleged crime] is received from a putative victim or an eyewitness, probable cause exists . . . unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citing *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) and *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). This Court's holding does not expand, in any way, that long-established rule of law. In short, there was evidence as to each element of malicious prosecution, and the jury was well within its right to find liability against all defendants on this claim.

Finally, the Court notes that it did not prevent counsel for defendants from arguing to the jury that the defendants' inability to control the charging decision by the police was evidence that they did not maliciously want plaintiffs to be arrested for a felony. In fact, counsel for defendants emphasized this point in his summation in arguing that there was insufficient evidence of malice as to the initiation of that particular charge:

> [T]his idea that they're Machiavellian manipulators that intentionally pumped up the value of the detectors in some type of conspiracy just doesn't make sense. None of the defendants, including Stein and the ones – are the once [sic] who actually charged the plaintiffs with grand larceny in the third-degree. Let me repeat that. None of the defendants are the ones who charged the plaintiffs with grand larceny in the third degree. There's no document signed by any of these defendants making that charge. The only thing that is signed by one of the defendants, Defendant Stein, is the supporting deposition that's Plaintiffs' exhibit 20, and it doesn't reference what charge, if

12

any, will be made if ever. Plaintiffs provided no documents to the contrary. There's nothing in the evidence to the contrary. The fact is the defendants don't decide what charge to put out. That's district attorney or the police. They don't have anything to do with this. And they can't show anywhere else. They can't show otherwise. They can't meet this element of malice. That element is gone, that is wrong. It shouldn't have been in this case. That claim should have never been made. Cross it out. Thank you.

(Tr. 1018:15-1019:14.) Thus, this issue regarding the inability of the defendants to control the charging decision was clearly placed before the jury on the question of malice. Moreover, there was more than sufficient evidence from which the jury could rationally reject that argument and find that the defendants specifically wanted plaintiffs to be charged by the police with a felony, and Commissioner Stein provided false information to the police to effectuate that malicious intention.[13] Here, a rational jury could have concluded: (1) that Commissioner Stein told the police that plaintiffs had removed 65 smoke detectors from the firehouse worth $50 (for a total value of $3,250), even though Chief Murray valued them at $10 each, and Commissioner Stein later admitted at his deposition that they were valued at $20-30 each (Tr. 227:12-14; 662:15-663:14; 666:3-9; 711:24-712:3); and (2) that Commissioner Stein provided that false information concerning the value of the detectors intentionally and maliciously in order to reach the threshold of $3,000 required to charge plaintiffs with a felony—which is exactly what the police did—so that plaintiffs could be removed from the fire department under the disciplinary rules.[14]

For these reasons, the Court concludes that there was no error in its instruction to the jury that, in order to find liability on the malicious prosecution claims, the jury must find that defendants lacked probable cause for the crime of Grand Larceny in the Third Degree. As such, defendants' motion to overturn the verdict as to both the liability and punitive damages on the malicious prosecution claims on this ground is denied.

3. Punitive Damages

Defendants request that the Court overturn the punitive damages award arising from plaintiffs' malicious prosecution claims because (1) plaintiffs did not prove defendants acted with malice or recklessness, and (2) Commissioner Stein has passed away.[15]

---

[13] Although Commissioner Stein was the one who provided the information to the police, the jury could reasonable infer from the totality of the evidence that Commissioners Divello, Bonura, and Brown also knew that there was a lack of probable cause for the charge and shared in the malicious intent to have plaintiffs charged with a felony to have them removed from the fire department. The Board authorized Commissioner Stein to press charges, as noted *supra*, and Commissioners Brown, Stein, and Bonura also met with the prosecutor after the arrest to advance the prosecution. (Tr. 367:18-368:5.)

[14] Plaintiffs correctly note that the jury could have rationally found that Commissioner Stein lied about other material facts, including the number of detectors. (Pls.' Br. 15 n.7.) Commissioner DiVello also admitted that he wanted plaintiffs removed from the Fire Department, and he knew that they would be automatically expelled from the Fire Department for a felony conviction. (Tr. 420:17-20.) Based on that testimony and all the other evidence in the record, the jury could have rationally concluded that Commissioners Brown and Bonura shared that knowledge of the policy and had a similar motive.

[15] Defendants also argue the punitive damages award as to the malicious prosecution claims should be overturned because (1) there was error in the Court's instruction as to the probable cause requirement,

13

The Court disagrees with defendants' argument that plaintiffs did not prove defendants acted with malice or recklessness. Consistent with the jury's finding that probable cause did not exist with respect to the Grand Larceny in the Third Degree charge in deciding plaintiffs' malicious prosecution claims, the jury could have inferred from that lack of probable cause that defendants acted with malice. *See, e.g., Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) ("Malice may be inferred from lack of probable cause."). Further, the jury could have found malice (1) as to Commissioner Stein because he provided false information to police, and as to all defendants because there was evidence that they were aware and approved of Commissioner Stein's provision of this information; (2) based upon evidence that defendants reported the crime with an improper purpose, namely, to ultimately expel plaintiffs from the fire department; and/or (3) based upon the history of friction between the parties.[16] *See Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 209-10 (2d Cir. 2014) (quoting *BMW, Inc. v. Gore*, 517 U.S. 559, 575 (1996)) (acknowledging in context of punitive damages that "[c]onduct that involves deceit or malice is more reprehensible than conduct involving mere negligence," and that reprehensibility is

"'[p]erhaps the most important indicium of the reasonableness of a punitive damages award.'"); *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994) ("In light of the circumstantial evidence present here—the history of friction between the defendants and the [plaintiffs] prior to the initiation of the criminal proceedings—it would not be unreasonable for a fact-finder to infer that the defendants acted with a wrong or improper motive."); *Cameron v. City of New York*, 598 F.3d 50, 69 (2d Cir. 2010) (holding that, where there was evidence that defendant police officers knew they lacked probable cause and provided false information, the jury could reasonably infer malice); *see also, e.g., Manganiello v. Agostini*, No. 07-Civ.-3644 (HB), 2008 WL 5159776, at *14 (S.D.N.Y. Dec. 9, 2008) ("A deliberate act punctuated with awareness of conscious falsity is evidence of malice, and if Officer Nieves had deliberately testified falsely, this would go to that element." (citation omitted)); *Abdell v. City of New York*, No. 05-CV-8453 (RJS), 2014 WL 3858319, at *2 (S.D.N.Y. Aug. 5, 2014) ("[T]he jury could infer malice sufficient to award punitive damages based solely on the Court's finding that there was no probable cause to arrest Plaintiffs."). In sum, there was evidence of malice on the part of all defendants such that the jury could find punitive damages were warranted.

Second, the Court disagrees with defendants' contention that Commissioner Stein's death warrants Rule 50 relief as to the punitive damages award imposed on all defendants. (Defs.' Br. 7.) As defendants point out, the purposes of punitive damages are two-fold: to "punish the defendant for his willful or malicious conduct" and to "deter others from similar behavior." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986). Defendants did not offer any explanation as to why the

---

which the Court rejected above, and (2) the Court incorrectly declined to strike or provide a curative instruction as to plaintiffs' counsel's rebuttal, which the Court rejects below.

[16] Defendants' references to the fact that Dolan Sr. took the smoke detectors twice do not alter the Court's ruling. To the extent that this evidence tended to show defendants did not possess malice, as defendants argue, the jury was entitled to consider that evidence alongside evidence that tended to show that defendants *did* possess the requisite malice, and the Court will "not itself weigh the credibility of witnesses or consider the weight of the evidence," *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001), to undermine its ultimate finding.

imposition of punitive damages, which occurred before Commissioner Stein's death, did not serve the purpose of punishing him, nor why Commissioner Stein's death would have any impact on the effectiveness of the punitive damages in "deter[ring] others from similar behavior." *Id.* Moreover, defendants failed to make any argument as to why Commissioner Stein's passing would impact the effectiveness of punitive damages as to the other individual defendants. In sum, the Court concludes that Commissioner Stein's death after the trial does not impact the award of punitive award damages in this case.[17]

### 4. Plaintiffs' Counsel's Representation in Rebuttal

Defendants also argue for Rule 50 relief on the ground that plaintiffs' counsel misrepresented key facts in his rebuttal argument and the Court failed to strike the statement.[18] The misrepresentation defendants take issue with is the statement that Commissioner Stein was the only source of information as to whether he had asked Dolan Sr. to return the smoke detectors, where Dolan Sr. himself had testified to that effect. Defendants made a motion to strike this portion of the rebuttal, which the Court denied. (Tr. 1042:12-1049:6.) In defendants' words, this decision was wrong because (1) the Court wrongly found a flaw in defendants' failure to raise the objection during plaintiffs' rebuttal, where it is clear that objections to summations may occur after summations have concluded; and (2) the Court wrongly concluded that the requested relief would disproportionately highlight the issue to the jury, where the testimony underlying the request (namely, Dolan Sr.'s testimony) was provided as part of plaintiffs' case, and not by a defense witness. (Defs.' Br. 12-13.)

As a threshold matter, the Court provided additional support for its discretionary decision that defendants do not reference, including: (1) the fact that counsel had not ordered a transcript of the testimony and there was a dispute as to what was said, rendering the Court unable to confirm the accuracy of counsel's position or to provide an instruction with the necessary context; (2) the objection was not only not made contemporaneously to the statement, or even when the jury had left for the day and the parties and the Court discussed the jury instructions after summations, but rather was made *four days* (including a weekend) following the summations and immediately before the Court was to provide the jury instructions; (3) in light of the length of time between the summations and the request, and the fact that the statement would have been stricken immediately prior to the jury instructions, the request would be highly prejudicial to plaintiffs (and might have wrongly suggested to the jury—by its strange timing—that the Court was eschewing its neutrality by attempting to highlight errors by plaintiffs' counsel); and (4) the Court specifically instructed the jury before

---

[17] Although defendants did not make this request, the Court has also considered whether Commissioner Stein's death warrants Rule 50 relief as to the punitive damages award imposed on Commissioner Stein alone. For the same reasons, the Court concludes it does not.

[18] At the time defendants raised this issue, they pointed out that they were not requesting a curative instruction, but that the statement be stricken from the record. (Tr. 1049:10-12.) In their motion, defendants argue a curative instruction was warranted, and also imply that a read-back of Dolan Sr.'s testimony was an appropriate solution. (*See* Defs.' Br. 13-14; *id.* at 14 ("[T]he concern that the curative instruction would inappropriately highlight one piece of evidence over other evidence was misplaced considering *the piece of evidence was Plaintiff Dolan Senior's actual testimony . . . .*").) The nature of the requested relief does not alter the Court's decision on the instant motion.

15

summations that, to the extent there were conflicts between a lawyer's description of the evidence of testimony and the juror's recollection, the juror's recollection controls, and, in any case, they were aware that they could ask for a read-back, thereby minimizing any prejudice defendants contended they would sustain from the alleged misrepresentation. In fact, the Court advised the jury that counsel's statements in summation were not evidence at least four times. (*See* Tr. 23:14-17; 919:13-21; 1054:3-11; 1082:22-1083:1.)

With this information and defendants' arguments in mind, the Court rejects defendants' request and finds that Rule 50 relief is not warranted on this basis.[19] First, the Court's multiple instructions to the jury that statements made in summations are not evidence and that a juror's recollection of the facts controls if that recollection conflicts with anything said by counsel were sufficiently curative of any misrepresentation by plaintiffs' counsel. The Second Circuit has approved such a measure in a similar case, *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (finding the trial court's instruction that summations were not evidence and that the jury was the sole judge of the facts was curative where prosecution made improper statements in summations), and district courts in this circuit have done the same, *see, e.g.*, *United States v. Diaz*, No. 04-CR-1353 (KMW), 2008 WL 4667989, at *6 (S.D.N.Y. Oct. 15, 2008) (denying motion for a new trial where "the Court [had] decided that specifically highlighting the [prosecution's] handwriting remarks for the jurors would be more prejudicial than curative," and the Court gave the curative instruction "that the summations are argument; not evidence," finding that this instruction was "a sufficient curative measure"); *U.S. E. Telecomm'ns, Inc. v. U.S. W. Info. Sys., Inc.*, No. 87 Civ. 2924 (KTD) (THK), 1993 WL 385810, at *30 (S.D.N.Y. Sept. 30, 1993) (misstatements of evidence did not warrant a new trial in light of, *inter alia*, the fact that "the jury was instructed that counsel's views and opinions had no evidentiary value and that it was the jury alone that was required to decide the facts, based upon its independent recollection of the evidence"); *see also United States v. Batista*, 684 F.3d 333, 342 (2d Cir. 2012) ("[W]e presume that a jury follows the instructions of the court."). Moreover, the Court adheres to its prior finding that, given the significant passage of time between the statement and defendants' request for relief, any further relief would have been unduly prejudicial to plaintiffs. In sum, having presided over the entire trial (and observed the evidence and the jury), the Court concludes that plaintiffs' counsel's statement, especially when viewed together with the Court's repeated instructions that the statement was not evidence, did not unfairly influence the jury, and Rule 50 relief is not warranted on this issue.

B. Rule 59

In defendants' request for relief under Rule 59,[20] they argue that the awards were

---

[19] As a threshold matter, the Court notes that this factual issue was not a dispositive issue in the trial. In other words, even if Commissioner Stein encouraged plaintiffs at some point to return the detectors to avoid prosecution, the jury still could rationally find, based on all the evidence in the case, that Commissioner Stein was involved in the malicious prosecution of plaintiffs, and committed abuse of process in initiating the charges with the collateral objective of having them removed from the fire department.

[20] Defendants also request a new trial as to liability pursuant to Rule 59 for the same reasons they requested Rule 50 relief. For the same reasons the Court rejects the request under Rule 50, the Court rejects the request under Rule 59 because the Court is not convinced that "the jury has reached a seriously erroneous result or the verdict is a miscarriage of

excessive and outside the bounds of reasonableness, and that plaintiffs' counsel incorrectly argued to the jury that plaintiffs were entitled to damages associated with arrest and confinement prior to their arraignment. The Court addresses each argument in turn.

The Second Circuit has stated that a jury's damages award should be set aside as excessive only when "the award is so high as to shock the judicial conscience and constitute a denial of justice." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998). The Court also notes that where, as here, the jury award encompasses compensation to plaintiffs for a variety of injuries, including subjective noneconomic harms, "it is difficult to precisely quantify damages for emotional distress, mental anguish, and mental pain and suffering, because such concepts are abstract and ill-suited to exacting calculation." *Ruhlmann v. Smith*, 323 F. Supp. 2d 356, 367 (N.D.N.Y. 2004).

Defendants argue that the jury's award of $400,000 in compensatory damages to Dolan Jr. is entirely unreasonable and shocks the judicial conscience. (Defs.' Br. 17.) Defendants also take issue with plaintiffs' recovery in connection with their arrest and confinement prior to their arraignment because, according to defendants, the abuse of process claim fails on the merits. However, as the Court has rejected defendants' arguments as to the abuse of process claim, the Court rejects this contention as well.[21] This finding resolves another argument advanced by defendants; namely, that Dolan Jr.'s award was unreasonable because it dealt only with "garden variety" emotional distress, (Defs.' Br. 19)—the award was for not only emotional distress, but also the loss of liberty and reputational harm, *Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir. 2004) ("The damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering."). In addition, to the extent that defendants attempt to analyze the selected jury award in a dollars per day or, by extrapolation, a dollars per year formula, defendants fail to cite any authority that such formulae should be used in reviewing the reasonableness of jury awards, and similar requests have been rejected in this district before. *See, e.g.*, *Crews v. County of Nassau*, 149 F. Supp. 3d 287, 291-92 (E.D.N.Y. 2015); *Graham v. City of New York*, No. 08-CV-3518 MKB, 2015 WL 5258741, at *25 (E.D.N.Y. Sept. 10, 2015).[22]

Here, as defendants concede, plaintiffs testified extensively as to the length and details of their arrests and confinement, including that they were handcuffed, confined in a jail cell with their wrists shackled to a wall, handcuffed to other

---

justice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004). In addition, defendants object to plaintiffs' counsel's statement in the damages summation that the upper range of compensatory damages was $1,000,000, arguing that this statement caused an erroneous and unconscionable jury award respecting compensatory damages. (*Id.*) However, the Court disagrees in light of its discussion below and rejects this argument.

[21] Because the abuse of process claim was part of the basis of the jury's award when considering confinement-related injuries, the Court need not and does not address the parties' dispute over whether damages for pre-arraignment injuries are permissible in malicious prosecution claims. (*See* Defs.' Br. 19; Pls.' Br. 20.)

[22] The Court notes that defendants incorrectly attribute the decision in *Stevens v. Rite Aid Corp.*, No. 13-CV-783 (TJM), 2015 WL 5602949 (N.D.N.Y. Sept. 23, 2015) to this Court. (*See* Defs.' Br. 21.)

17

prisoners, and not able to freely use the restroom. Concerning post-release harms, Dolan Jr. testified that he gained weight, became less social, and ceased exercising. In addition, Dolan Jr. testified as to the harms his reputation suffered because of the publicity associated with his arrest.[23] Under these circumstances, it is clear that the jury's award of $400,000 to Dolan Jr. was not unreasonable or excessive.

"In determining whether a jury's award is excessive, courts take into account awards rendered in similar cases, 'bearing in mind that any given judgment depends on a unique set of facts and circumstances.'" *Olsen v. County of Nassau*, 615 F. Supp. 2d 35, 45 (E.D.N.Y. 2009) (quoting *Scala v. Moore McCormack Lines*, 985 F.2d 680, 684 (2d Cir. 1993)). "A jury's award of damages 'may not be overturned unless it is so excessive that it shocks the conscience of the court.'" *Id*. (quoting *McGrory v. City of New York*, No. 99 Civ. 4062, 2004 WL 2290898, at *13 (S.D.N.Y. Oct. 8, 2004)).

The $400,000 award here does not shock the Court's conscience, nor is it even unreasonable given the evidence in the case. The Second Circuit has affirmed an award of up to $125,000 in "mental anguish damages" where there was no evidence of "physical sequelae or professional treatment." *Meacham v. Knolls Atomic Power Lab*., 381 F.3d 56, 77 (2d Cir. 2004), *vacated on other grounds sub nom. KAPL, Inc. v. Meacham*, 544 U.S. 957 (2005) (applying less deferential New York standard of review); *see also Lore v. City of Syracuse*, 670 F.3d 127, 179 (2d Cir. 2012) (affirming $250,000 jury award for reputational injury and emotional distress). In fact, courts in this district have approved awards of $175,000 and $200,000 for emotional distress where, as here, there was no medical evidence and the damages were supported solely by the plaintiff's testimony. *See, e.g.*, *Tretola v. County of Nassau*, 14 F. Supp. 3d 58, 80-85 (E.D.N.Y. 2014) (remitting emotional distress award to $175,000 where plaintiff testified that he was humiliated and ostracized by friends in law enforcement, and had trouble sleeping and stomach pains); *Wallace v. Suffolk Cty. Police Dep't*, No. 04–CV–2599 (RRM) (WDW), 2010 WL 3835882, at *8-9 (E.D.N.Y. Sept. 24, 2010) (declining to remit $200,000 award where plaintiff testified that he suffered from sleepless nights, became tense, agitated, worried, and more quick-tempered, and the condition continued through the time of trial); *see also Jowers v. DME Interactive Holdings, Inc*., No. 00 Civ. 4753 LTS KNF, 2006 WL 1408671, at *3 (S.D.N.Y. May 22, 2006) ("When determining damages for mental anguish, a plaintiff's recovery is not preconditioned on whether she underwent treatment, psychiatric or otherwise.").

Here, there was not only extensive testimony by Dolan Jr. about the substantial emotional distress caused by the prosecution, but there also was substantial testimony about his loss of liberty and reputational harm. When all of these categories are considered together, there is no question that the $400,000 is well within the range of awards rendered in similar cases. *See, e.g.*, *Ismail v. Cohen*, 899 F.2d 183, 185-87 (2d Cir. 1990) ($650,000 in

---

[23] Defendants point to evidence during the trial that: (1) Dolan Jr. had a prior arrest; (2) Dolan Jr. did not seek mental health treatment for these harms; (3) Dolan Jr. acknowledged that his emotional distress was greatly reduced when the charges were dropped; and (4) none of the news reports of his arrest asserted that he was found guilty of any crime. Defendants argue that these and other facts undermining Dolan Jr.'s damages claim render the jury's verdict unreasonable or excessive. The Court disagrees. The jury was entitled to weigh this evidence alongside the other testimony and evidence, and its ultimate award was neither unreasonable nor excessive in light of all the evidence.

compensatory damages where plaintiff was unjustly confined for sixty hours and then tried and acquitted on three criminal counts, where defendant police officer "gave materially false testimony and admitted that, although he never even read the criminal complaint, he had sworn to its accuracy").

Similarly, the Court rejects defendants' request that the Court order a new trial or remittitur of the compensatory damages awarded to Dolan Sr. In making their request, defendants appear to assert that Dolan Sr. proximately caused his damages, but they fail to cite *any* legal authority. (Defs.' Br. 24-25.) Given this failure, plaintiffs' testimony as to the injuries incident to confinement and arrest, and the fact that the jury could have reasonably concluded that the damages were proximately caused by defendants' own actions, the Court finds that defendants' argument is meritless. In short, the Court similarly concludes that $150,000 in compensatory damages for Dolan Sr. for his loss of liberty, his emotional distress, and his reputational harm, is certainly within the bounds of reasonableness given the evidence in the case and awards in similar cases.

IV. CONCLUSION

For the foregoing reasons, the Court concludes that defendants have failed to set forth any grounds for relief under Rules 50 or 59 of the Federal Rules of Civil Procedure. Accordingly, the Court denies defendants' motions pursuant to Federal Rules of Civil Procedure 50 and 59.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: December 22, 2017
Central Islip, NY

\*\*\*

Plaintiffs are represented by Rick Ostrove and Andrew George Costello, Leeds Brown Law P.C., One Old Country Road, Suite 347, Carle Place, NY 11514. Defendants are represented by Gregory Bertram Reilly and Aisling Margaret McAllister, Martin Clearwater & Bell LLP, 220 East 42nd Street, New York, NY 10017.

19